Koehler, Appellant, v. Gross et al.

Argued May 20, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Benjamin B. Hoar,* of *Taylor, Robey, Hoar & Nicholson,* for appellant.—Plaintiff produced sufficient evidence to warrant the jury in finding that plaintiff procured the mortgage loan on the terms of the written authorization: Mitchell v. New Castle, 275 Pa. 426; Fluke v. Lang, 283 Pa. 54; Dunbar v. Preston, 285 Pa. 502; Caldwell v. Trust Co., 291 Pa. 35; Mountain v. Glass Co., 263 Pa. 181; Horter v. Walsh, 70 Pa. Superior Ct. 442; Welch v. Dakin, 68 Pa. Superior Ct. 361.

Plaintiff produced sufficient evidence to warrant the jury in finding that the funds were available for settlement within the specified time, and that the commercial advance corporation was ready and able to make the loan in question: Welch v. Dakin, 68 Pa. Superior Ct. 361.

All defenses made by defendants raise disputed questions of fact for the jury, and under no circumstances form the basis for entering judgment n. o. v. in favor of defendants: Gianni v. Russell, 281 Pa. 320; Murphy v. Pinney, 86 Pa. Superior Ct. 458; Wagner v. Marcus, 288 Pa. 579; Evans v. Edelstein, 276 Pa. 516; Cridge's Est., 289 Pa. 331.

*Abraham Wernick,* of *Evans & Wernick,* for appellees, was not heard.

OPINION BY MR. JUSTICE WALLING, July 1, 1929:

The parties to this suit were engaged in business in Philadelphia, the plaintiff, Robert Phillip Koehler as a licensed real estate broker, and the defendants, George E. Gross and Frank C. Hood, as building contractors. A branch of plaintiff's business was the negotiation of mortgage loans. About January 1, 1925, William F. Stief, who was also engaged in the real estate business, sought to interest defendants in the purchase and improvement of certain vacant land at Highland Park, a suburb of Philadelphia. The plan was to erect thereon twenty-seven semidetached dwelling houses for sale to

home seekers. The land was owned by Emmett C. Roop, and for sale at $45,000. The project was to be financed by an improvement loan, secured by a first mortgage on the land and prospective improvements. Stief brought plaintiff in primarily to assist in securing the loan and thereafter he apparently took charge of the negotiations and on February 24, 1925, three written authorizations, riveted together and bound under one cover, were given him by the defendants. The first of these appointed Koehler an exclusive agent for ten days to obtain a $148,-500 loan to be secured by a first mortgage on the twenty-seven lots, located, "on Pennock Avenue, Windrim Road, Fairview Avenue and Lennox Avenue, Highland Park, Pa., as shown on the plan attached hereto, and the twenty-seven (27) two (2) story semidetached dwellings to be thereon erected." The authorization further stated, inter alia, that: "The said mortgage is to bear interest at six (6) per cent per annum, the said interest to be payable only on the amounts withdrawn, and is to be created for a term of six (6) months, provided, however, that the term may be extended from month to month for a further period of six (6) months upon payment of interest......the mortgage can be paid back at any time and interest paid only for days used. For procuring this loan the undersigned agree to pay to the said agent a commission of sixteen thousand eight hundred and seventy-five dollars...... The said commission shall be payable to the said agent at the time and only if funds are made available for settlement." The authorization also provides that out of his commission plaintiff shall pay numerous expenses connected with the transaction, leaving his net commission, as he avers, $6,851.25.

The second authorization appointed Koehler exclusive agent to buy the lots from Roop at a price not exceeding $45,000, according to the terms of a certain agreement between Roop and the defendants. For this service the agent was to receive $2,700, to be deducted from the

larger commission above mentioned. The third authorization appointed Koehler an exclusive agent to sell the twenty-seven houses and lots on terms therein stated, he to receive a commission of three per cent for so doing. The second and third authorizations were signed by Hood, but not by Gross; as they were partners this probably was not very material. The contemplated purchase of the lots was never consummated and later Roop made another disposition of them and the $2,000 check deposit as hand money was returned to defendants.

Pending the negotiations, however, and as connected therewith, Koehler took up the matter of securing the mortgage loan with the Commercial Advance Corporation, a local concern. These negotiations progressed so successfully that on March 3, 1925, the executive committee of the last named corporation adopted a resolution as follows: "It was regularly moved, seconded, and carried, that the application of Robert Koehler for a first mortgage construction loan on properties located on Pennock Avenue and Lennox Street, Delaware County, and owned and to be constructed by Hood and Gross, Contractors, be approved; loan not to exceed $151,000."

As the property was not bought the loan was never consummated; but, after some correspondence, plaintiff brought this suit on the contention that as he had produced a customer, ready, able and willing to make the loan he was entitled to his net commission thereon. The case was submitted to the jury, who found a verdict of $4,053.50 for plaintiff; but the court in banc, upon due consideration, entered judgment for the defendants non obstante veredicto and plaintiff has appealed.

The first and second authorizations above mentioned were so interrelated that unless the failure to buy the lots was due to the defendants' fault plaintiff's claim for commissions must fail. For he could not recover commissions for securing a mortgage loan, which was rendered impossible by his failure to buy the property to be

embraced therein; he being exclusive agent for that purpose. Under the evidence it was possibly for the jury to decide who was at fault. The court in banc, however, based its conclusion upon other grounds entirely tenable. It was necessary for plaintiff to prove that he had secured the loan according to the terms of his authorization: Louchheim v. Loeb, trustee, 73 Pa. Superior. Ct. 584. This he failed to do. The executive committee's resolution refers to land on two named streets in Delaware County, not even naming the borough, whereas the authorization was for land on four streets in Highland Park. That the resolution says it was owned by Hood and Gross proves nothing for they never owned the land in question, which plaintiff well knew. Again, the authorization is for a loan with the right of renewal and the right to repay at any time and other conditions entirely absent from the resolution. Hence, it does not appear that the corporation agreed to lend on the conditions named in the authorization. While plaintiff says, in substance, that the loan was to be according to the authorization, that is merely his conclusion and he states no facts to support it. Referring to his application to the corporation for the loan he testified: "Q. What was it—in the form of a written application or in the form of a letter? A. No; it was in the form of a set-up for the operation, showing the amount of cash required, and the amount of each subcontract also straight down the line—the amount of cash that was required by each subcontractor, and the amount of paper each subcontractor was willing to take, and the estimated expenses of settlement and title insurance all the rest of this, showing the amount of money that would be required for building the houses." But this indicates nothing as to the terms and conditions of the proposed loan. And, in answer to further questions, he said: "I don't remember whether I made written application or not."

Furthermore, while the proof indicates a willingness on part of the Commercial Advance Corporation to make the loan, there was not sufficient proof of its ability to do so. There was evidence that the corporation had $70,000 then on deposit in various banks and in addition credit at the same banks, aggregating $135,000; but it is not shown what amount of available cash could presently be secured from this credit. Hence, the corporation's ability to make the loan was not shown. Speaking of this the court in banc, says: "An additional reason which precludes plaintiff's recovery is that he has not shown that the Commercial Advance Corporation was ready, able and willing to make the loan. The minute indicates willingness, but the evidence does not prove that it was ready or able to advance $148,500 at the time when the corporate action was taken, or at any subsequent time. The fact that banks extended credit of a certain amount does not indicate that the corporation was ready and able to make the loan. It is a matter of common knowledge that banks do not extend credit by allowing borrowers to draw upon funds. Evidence of an indebtedness is required from the party to whom they advance funds. It is equally a matter of common knowledge that banks do not retain funds under an indefinite arrangement that they may be available whenever a borrower sees fit to call for them. Until such credit is used in a loan from the bank, it cannot be said to be available to a borrower. The evidence does not show that the Commercial Advance Corporation was ready and able to make the loan of $148,500." So it does not appear that funds were made available for settlement within the terms of the authorization, certainly not within the ten days. While plaintiff's letter to defendants of March 6, 1925, asserts that he had procured the loan, it fails to assert that it was presently available for settlement. And his letter of March 30th, says, "The funds have been available for settlement since March 10th," and his further letter of April 7th, says, "By Fri-

day April 10th, one month will have elapsed since these funds referred to were made available for settlement." These repeated written statements by plaintiff are inconsistent with his later claim that the funds were available for settlement within the ten days after February 24th.

The judgment is affirmed.